**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| RYAN DUMAS, on behalf of himself and others similarly situated, | : : | No. 9:22-cv-80356-AMC |
| Plaintiff, | : : : | |
| v. | : : | **CLASS ACTION** |
| PARADISE EXTERIORS, LLC | : : | |
| Defendant. | : : : | |

_____/

**RENEWED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

## I.      INTRODUCTION

Representative Plaintiff Ryan Dumas and Defendant Paradise Exteriors, LLC have reached a class action settlement agreement ("Settlement Agreement" or "Agreement")[1] resulting in a $1,400,000 Settlement for the benefit of the Class. Each Class Member will receive $575 less each member's share of any Fee Award. Moreover, Defendant has agreed to meaningful remedial relief where it has agreed to no longer make telemarketing calls to individuals that they receive as referrals. This is an excellent result. If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, hard-fought litigation centered on unsettled factual and legal questions.

This motion seeks the entry of an order providing for, among other things:

1. Preliminary approval of the Settlement;

2. Approval of the Settlement Administrator;

3. Approval of the Notice Plan describing: (a) the Settlement and Class Members' rights; (b) the proposed release of claims; (c) Class Counsel's request for attorneys' fees and expenses; and (d) the procedures and deadlines for opting-out of or for objecting to the Settlement and for making a claim;

4. Approval of the claims process; and

5. The scheduling of a Final Approval Hearing to consider final approval of the Settlement.

The Parties' proposed Settlement is exceedingly fair and well within the range of preliminary approval for several reasons. *See* Declaration of Avi R. Kaufman (attached as Exhibit 1) at ¶ 2.

First, the Settlement provides immediate monetary relief for Class Members whereas Class Members' recovery, if any, would otherwise be uncertain given Defendant's financial capacity, consistent denials of liability, and its otherwise vigorous defense of the Litigation. *Id*. And that relief is above the range of similar TCPA class action settlements. *Id*. Moreover, Defendant has

---

[1] The Settlement Agreement can be found at ECF 47-1. All capitalized terms used herein have the same definitions as those defined in the Agreement.

also agreed to cease telemarketing to telephone numbers obtained as referrals. *Id.*

Second, prior to reaching the Settlement, the Parties engaged in extensive arm's-length negotiations, including two day long mediations with mediators – one with Samuel Heller of Upchurch Watson White & Max, and a second day long mediation with Hon. David Jones (Ret.) of Signature Resolutions, and follow up negotiations between the Parties that ultimately resulted in the Settlement. *Id.*

Third, the Settlement was not conditioned on any amount of attorneys' fees for Class Counsel or payment to Plaintiff, underscoring the fairness of the process. *Id.* For all these reasons, and as further described below, Representative Plaintiff respectfully requests that the Court preliminarily approve the Settlement.

## II.    BACKGROUND

### a.    The Telephone Consumer Protection Act

The Telephone Consumer Protection Act, 47 U.S.C. § 227, and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…."[2] The TCPA's sponsor described unwanted robocalls as "the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821 (1991) (statement of Sen. Hollings).  As a remedial statute that was passed to protect consumers from unsolicited automated telephone calls, the TCPA is construed broadly to benefit consumers. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

### b.    Procedural History

On March 7, 2022, Plaintiff Ryan Dumas filed the complaint against Defendant in this

---

[2]  FCC, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

action asserting that Paradise Exteriors, LLC violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* by making unsolicited prerecorded calls. On June 27, 2022, Defendant filed a motion to strike the class allegations (ECF 9) and a motion to dismiss the complaint arguing that the TCPA is unconstitutional (ECF 10).

The parties conducted their Rule 26 conference on July 7, 2022 and filed a joint scheduling report on July 8, 2022. ECF 13. Also on July 8, 2022, Defendant filed a motion to stay or bifurcate discovery. ECF 15. On July 11, 2022, the Court entered a scheduling order and denied Defendant's motion to stay or bifurcate discovery. ECF 18

Also on July 11, 2022, Plaintiff filed his amended complaint. ECF 20. On July 25, 2022, Defendant filed a motion to dismiss, arguing unconstitutionality, (ECF 22) and moved to strike the class allegations from the amended complaint (ECF 23). The motions were fully briefed, and, on October 31, 2022, a hearing was held on the motions. On November 1, 2022, the Court ordered that the complaint be further amended to encompass all calls made without the recipient's prior express consent and clarify Plaintiff's non-assertion of vicarious liability. ECF 39. The Order denied as moot Defendant's motion to dismiss and motion to strike class allegations. ECF 39.

On November 15, 2022, Plaintiff filed his second amended complaint. ECF 41. On December 9, 2022, Defendant answered the complaint. ECF 44.

Since the parties Rule 26 conference, the parties committed significant resources to pursuing discovery in this action, including: the exchange of written discovery, followed by extensive meet and confers resulting in Defendant's service of amended responses on October 5, 2022, Plaintiff's issuance of a third-party subpoena to Five9 seeking call logs for Defendant's prerecorded calls, and, ultimately, Defendant's production of class-wide call records. On October 26, 2022, Plaintiff served his expert report analyzing the call logs.  The parties also respectively noticed and prepared to take/defend the depositions of Defendant's employee in charge of utilizing the dialing system and Plaintiff but settled in principle in the days prior to the depositions.

Over the course of this action, the parties also committed significant resources to evaluating and ultimately reaching settlement. On August 4, 2022, the Parties attended a full day in person mediation with Samuel Heller of Upchurch Watson White & Max. While the mediation ended in an impasse, after additional discovery including the exchange of expert reports, the parties participated in a second day long mediation with Hon. David Jones (Ret.) of Signature Resolutions on November 29, 2022. The parties' negotiations continued for nearly another month and resulted in this class action settlement in principle.

The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Litigation through trial and appeals. Kaufman Decl. ¶ 6. Class Counsel has considered the strength of Defendant's defenses. Class Counsel has also considered the delays, uncertain outcomes, and risks of litigation generally, especially in complex actions such as this one.

Class Counsel believes that the proposed Settlement confers substantial and immediate benefits upon the Class whereas continued and protracted litigation, even if successful, might ultimately deliver none. Kaufman Decl. ¶ 7. Based on their evaluation of all these factors, Representative Plaintiff and Class Counsel have determined that the Settlement is in the best interests of Representative Plaintiff and the Class. *Id.*

## III.    SUMMARY OF THE SETTLEMENT TERMS

The following is a summary of the Settlement's material terms.

### a.    The Settlement Class

The Class is defined as all users or subscribers to cellular telephone numbers that were contacted by Defendant using a prerecorded voice message from November 1, 2021 through April 30, 2022 after having been supplied as referrals by existing customers of Paradise Exteriors. For purposes of settlement the parties estimate the class consists of approximately 2,435 individuals. Agreement at ¶ 1.1.9.

### b. **Settlement Consideration**

Pursuant to the Settlement Agreement, Defendant has agreed to a Settlement Sum of $1,400,000. The Settlement Sum will be used to pay (a) Approved Claims to Class Members, (b) Settlement Administration Expenses, and (c) any Fee Award.  Agreement at ¶ 1.1.38.

Defendant has also agreed to cease telemarketing to telephone numbers obtained as referrals. Agreement at ¶ 4.4.

### c. **Settlement Administrator**

Pending this Court's approval, Kroll Settlement Administration LLC will serve as the Settlement Administrator. The Settlement Administrator's responsibilities include:  i. providing CAFA notice; ii. establishing and maintaining the Class Settlement Website; iii. implementing the Notice Plan; iv. receiving, evaluating, and processing Claim Forms; v. providing reports about the Notice Plan and number and identity of opt-outs (if any) to Class Counsel; vi. responding to any Class Member inquiries; vii. processing all opt-out requests from the Class; viii. performing the duties described in the Agreement, and any other function related to Settlement administration at the joint instruction of Class Counsel and Defendant; and ix. distributing payments to the Class Members that file Approved Claims, as detailed in the Agreement. Agreement at §§ 6 and 7.

The anticipated Settlement Administration Expenses are approximately $45,000. Kaufman Decl. ¶ 8. Those costs are reasonable in light of costs for, among other things, mailed notice, claim verification, and distribution of settlement funds to more than two thousand Class Members. *Id*.

### d. **The Notice Plan**

The Settlement Administrator will be responsible for administering the Notice Plan.  The Notice Plan consists of: (1) direct mailed Summary Notice and (2) Long-Form Notice through the Class Settlement Website. Agreement at § 6. The forms of the proposed Long-Form Notice and Summary Notice agreed upon by Class Counsel and Defendant, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as Exhibits B and C.

The Notice Plan is designed to provide the Class with important information regarding the

Settlement and their rights thereunder, including a description of the material terms of the Settlement; a description of the process for opting out of or objecting to the Settlement and the date by which to do so; a description of the process for submitting a Claim Form and the date by which it must be submitted; a description of Class Counsel's fee application, including the amount of fees that will be requested[3]; the date of the Final Approval Hearing; and information about where Class Members may access the Agreement and other important documents. The Notice Plan here is straightforward, easy to understand for Class Members, and designed to inform them of their rights and the deadlines by which to exercise them under the Agreement. Kaufman Decl. ¶ 8.

The Settlement Administrator shall send direct notice within thirty (30) days after the Court enters the Preliminary Approval Order.  The Notice Plan is consistent with or exceeds other court-approved notice programs, is the best notice practicable under the circumstances of this case, and has been designed to satisfy the requirements of due process, including its desire to actually inform requirement. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950).

### e.   <u>Opt-Out and Objection Procedures</u>

Any Class Member who does not wish to participate in this Settlement must write to the Settlement Administrator stating an intention to be excluded from this Settlement. This written request for exclusion must be sent by mail to the Settlement Administrator at the address set forth in the Notice and postmarked no later than the Opt-Out Deadline. Class Members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Defendant, subject to any defenses that Defendant may have against those claims. Agreement at ¶ 9.4.

Any objection to the Settlement must be in writing, and filed with the Court or mailed to the Clerk's Office by no later than the Opt-Out Deadline. Class Members may object either on

---

[3] The Notice states that Class Counsel will request attorneys' fees in an amount not to exceed one third of the Settlement Sum. Plaintiff and Class Counsel are amenable to adding the precise dollar amount this equates to ($466,666) should the Court deem it appropriate.

their own or through an attorney hired at their own expense.  If an objecting party wishes to present witnesses or evidence at the Final Approval Hearing in support of a timely and validly submitted objection, all witnesses must be identified in the objection, and true and correct copies of all supporting evidence must be appended to, or filed and served with, the objection. Agreement at ¶ 9.2.

      **f.**   <u>**Release of Claims**</u>

In exchange for the Settlement consideration, Plaintiff and all Class Members agree to release the claims set forth in paragraph 1.1.31 of the Agreement. The Released Claims are narrowly defined and include only claims that could have been brought in the Litigation relating to calling conduct. Kaufman Decl. ¶ 9.

Separately, Defendant has agreed to pay $5,000, subject to Court approval, in the interest of compromising Representative Plaintiff's individual claims not released in the Settlement Agreement against Defendant, as well as resolving all outstanding issues between Defendant and Plaintiff through the Effective Date. This payment to Plaintiff will be paid by Defendant directly and will not be paid from the Settlement Sum. Agreement at ¶ 4.3.

      **g.**   <u>**Claims Process and Calculation of Approved Claim Payments**</u>

Each member of the Class who does not timely opt-out from the Settlement shall be a Class Member and entitled to make a claim. The form of the proposed Claim Form agreed upon by Class Counsel and Defendant, subject to this Court's approval and/or modification, is attached to the Settlement Agreement as Exhibit A.  Each Class Member who timely submits a valid Claim Form by the Claims Deadline shall be entitled to a payment in an amount of $575 per telephone number less each Class Member's share of any Fee Award.  Agreement at § 4. In the event that the total amount of Claim Settlement Payments for Approved Claims would exceed the threshold at which there would be insufficient funds in the Settlement Sum to pay all Approved Claims, any Fee Award, and Settlement Administration Expenses, the amount on a per claim basis will also be reduced by each Class Member's share of Settlement Administration Expenses so that the

Settlement Sum is exhausted but not exceeded. *Id*.

**h.   Distribution of Settlement Sum**

Within sixty (60) days after the Effective Date, or such other date as the Court may set, the Settlement Administrator shall pay from the Settlement Sum all Approved Claims by checks made payable to the Class Members submitting Approved Claims.  To the extent that any checks to Class Members expire and become null and void, the Settlement Administrator shall distribute the funds associated with those checks on a per claim basis to Class Members who submitted an Approved Claim and who cashed their checks. In the event that the Settlement Administration Expenses associated with the redistribution together with the amount to be redistributed would exceed the funds in the Settlement Sum, the amount of the redistribution will be reduced by each Class Member's share of Settlement Administration Expenses associated with the redistribution so that the Settlement Sum is exhausted but not exceeded.

**i.   Class Counsel Fees and Expenses**

Defendant has agreed to pay from the Settlement Sum reasonable attorneys' fees and costs to Class Counsel, in an amount to be determined by the Court. Agreement at § 5.

Class Counsel intends to apply to the Court for attorneys' fees totaling not more than one-third of the Settlement Sum ($466,666) and documented and reasonable expenses and costs incurred in the Litigation. Class Counsel's application for a Fee Award shall be filed no later than thirty-five (35) days prior to the Opt-Out Deadline. If the Court approves the Settlement, but declines to award a Fee Award in the amount requested by Class Counsel, the Settlement will nevertheless be binding on the Parties and the Class Members. Agreement at § 5. The Court should consider whether to grant or deny this award separate and apart from its consideration of the Settlement's fairness and reasonableness.

**IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

**a.   The Legal Standard for Preliminary Approval**

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may

be compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e).  As a matter of public policy, courts favor settlement of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *E.g.*, *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *E.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

Approval of a class action settlement is a multi-step process involving preliminary and then final approval.  The Court's first step in granting preliminary approval of a settlement is to determine that the proposed settlement class is appropriate for certification. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To certify a class, the plaintiff must demonstrate that the proposed class and proposed class representative meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)–(4).

The second step in granting preliminary approval is to determine that the settlement falls "within the range of possible approval" or, otherwise stated, that there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting *Manual for Compl. Lit.* § 1.46 at 62, 64-65 (1982)); *see also Newberg on Class Actions* § 13:13 (5th ed. 2016). "[P]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832, at *7 (S.D. Fla. June 15, 2010); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011); *see De*

*Cabrera v. Swift Beef Co.*, 2020 U.S. Dist. LEXIS 164615, at *13 (C.D. Cal. June 25, 2020) (A preliminary fairness determination is appropriate "if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."); *see also Ross v. A.H. Robins Co.*, 700 F. Supp. 682, 683 (S.D.N.Y. 1988) ("A strong initial presumption exists in favor of a proposed settlement where the proponents establish that: (i) the settlement is not collusive …; (ii) the proponents have counsel experienced in similar cases; (iii) there has been sufficient discovery ….").

The Court should take the first step in the process of approving the Settlement and grant preliminary approval.  The Settlement was negotiated at arm's length, is clearly within the range of reasonableness, and otherwise satisfies all requirements for preliminary approval.  In fact, the Settlement provides immediate and significant monetary and remedial relief.

### b.   <u>The Settlement Satisfies the Criteria for Preliminary Approval</u>

Each of the relevant factors weighs heavily in favor of preliminary approval of this Settlement. Kaufman Decl. ¶ 10. The Settlement was the result of serious, informed, non-collusive negotiations, has no obvious deficiencies, and falls well within the range of reasonableness. *Id*.

#### i.   **The Settlement Agreement is the Product of Serious, Informed and Arm's Length Negotiations**

First, the proposed Settlement is the product of serious, informed, non-collusive negotiations. *E.g.*, *Cotton*, 559 F.2d at 1330. Settlements are generally found to be non-collusive when reached with the assistance of a third-party neutral, *e.g., Boring v. Bed Bath & Beyond of Cal. LLC*, 2013 U.S. Dist. LEXIS 165909, at *21 (N.D. Cal. Nov. 21, 2013), and are found to have been informed where the parties exchanged evidence and information prior to negotiations. *E.g.*, *Moshogiannis v. Sec. Consultants Grp., Inc*., 2012 U.S. Dist. LEXIS 16287, at *14 (N.D. Cal. Feb. 8, 2012) (approving settlement where "the parties conducted a significant amount of informal

discovery…").  Here, the Settlement was negotiated with the assistance of Samuel Heller of Upchurch Watson White & Max and a second day long mediation with Hon. David Jones (Ret.) of Signature Resolutions on November 29, 2022. Kaufman Decl. ¶ 11.

Moreover, this case included substantial discovery, with the settlement reached only when class discovery was coming to a close, providing Class Counsel a full appreciation for the parties' respective factual and legal positions. *Id*. at ¶ 12. Class Counsel's understanding of the key issues driving the Litigation, including the likelihood of success of Defendant's anticipated challenge to class certification, the strength of Defendant's defenses at trial, and the ever-shifting TCPA law landscape, prepared him for well-informed settlement negotiations. *Id*.

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this case. Class Counsel has extensive experience and expertise prosecuting complex class actions, and are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases.  *Id*. at ¶¶ 13-18. Class Counsel zealously represented Plaintiff and the Class Members' interests throughout the Litigation and will continue to do so. Kaufman Decl. ¶ 19. And Defendant was ably represented by defense counsel. The Settlement is therefore the result of serious, arm's-length, and informed negotiations justifying preliminary approval.

### ii.  There Are No Obvious Deficiencies in the Settlement

The Settlement is reasonable and fair because it provides an excellent monetary result for Class Members and meaningful remedial relief in return for a narrow release tailored to the conduct and claims presented in the Litigation.  While payments for attorneys' fees and expenses are to be paid from the Settlement Sum, the Settlement is not conditioned on any such award and Defendant retains the right to object to any request for such award.

Additionally, the Settlement includes a comprehensive Notice Plan, which provides notice to Class Members of, among other things, the procedures and deadlines for opting out of or

objecting to the Settlement or filing a Claim.  The Settlement also provides for a Settlement Administrator to coordinate notice to the class, any requests for exclusion, claims processing, and payments to Class Members upon final approval.

The Settlement provides no preferential treatment to any individual member of the Class. Under the Settlement, everyone in the class is treated identically: each class member seeking to recover a portion of the Settlement Sum must submit the same Claim Form, and each class member submitting a valid Claim will receive the same distribution from the Settlement Sum.

Accordingly, there are no obvious deficiencies in the Settlement, and preliminary approval is warranted. *E.g., De Leon v. Ricoh USA, Inc.*, 2019 U.S. Dist. LEXIS 204442, at *31 (N.D. Cal. Nov. 25, 2019).

### iii.   The Settlement Is Within the Range of Possible Approval

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330.  "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id*.

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. *E.g., Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988).  Courts recognize that the "essence of settlement is compromise," and a settlement need not represent a complete victory for the plaintiffs to be approved. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996). Although the TCPA provides for statutory damages of $500 for each negligent violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial. *See, e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).  "The Court's function on this application is well known it is not to reopen and enter into negotiations with the litigants in the hope of improving the settlement to meet an

objector's particular objections; nor is the Court called upon to substitute its business judgment for that of the parties who worked out a settlement after hard, arm's-length, good-faith bargaining. Rather, it is called upon to evaluate the probabilities of success upon a trial and to compare the benefits thereof with the terms of compromise." *Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75, 78 (S.D.N.Y. 1980).

Here, the monetary relief on a per Class Member basis and the remedial relief agreed to by Defendant place the Settlement well within the range of possible approval. Kaufman Decl. ¶ 20. The total Settlement Sum available to the class to resolve this matter is $1,400,000, which is equal to $575 per Class Member. *Id*. This is an extraordinary result and exceeds the range of similar settlements in cases. *Id*.; *see, e.g.*, *In re Capital One TCPA  Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval where each claimant  would receive $39.66); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) ($30 per claimant);  *Markos v. Wells Fargo Bank, N.A*., 2017 WL 416425, at *4 (N.D. Ga.  Jan. 30, 2017) (approving settlement of $24 per  claimant, and finding that the settlement was an "excellent result").

Ultimately, any settlement requires the parties to balance the merits of the claims and defenses asserted against the risks of continued litigation and attendant delay. Kaufman Decl. ¶ 21.  Plaintiff and Class Counsel believe that the Class Members' claims are meritorious and that Representative Plaintiff would prevail if this matter proceeded to trial. *Id*. Defendant has consistently denied any liability and is defended the action vigorously. *Id*. The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Litigation through trial and potentially appeals. *Id*. Class Counsel also have taken into account the strength of Defendant's defenses, potential difficulties in proving Plaintiff's claim, the uncertain outcome and risk of litigation especially in complex actions such as this one, the inherent delays in such litigation. *Id*. Class Counsel believe that the proposed Settlement confers substantial and immediate monetary and non-monetary benefits upon the Class. *Id*. Based on their

evaluation of all these factors, Plaintiff and Class Counsel have determined that the Settlement is in the best interests of Plaintiff and the Class, who otherwise may have received nothing. *Id*.

### iv.   The Settlement Similarly Satisfies Rule 23(e)'s Requirements

Under Rule 23(e)(2), a district court similarly considers whether (A) the class representatives and their counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided by the settlement is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; (iv) any agreement required to be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (v) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

First, the class representative and counsel have adequately represented the class, this includes the class plaintiff rejecting an individual settlement offer that substantially exceeded his potential individual recovery and refusing to resolve the case on any basis other than a class basis. Kaufman Decl. ¶ 22.

Second, the proposal was negotiated at arm's length, including two-day long mediations with mediators – one with Samuel Heller of Upchurch Watson White & Max, and a second day long mediation with Hon. David Jones (Ret.) of Signature Resolutions. *Id*. ¶ 11.

Third, the relief provided by the settlement is more than adequate. With respect to the risks and delay of trial and appeal, consumers have experienced these delays in TCPA cases. For example, in *Krakauer v. Dish Network, L.L.C.,* USDC, M.D.N.C., 1:14-CV-333, following a 2019 verdict, the final appeal was disposed of in 2023 and was on appeal for years after the initial trial was completed. In short, litigating this action would have proven lengthy, complex and expensive,

thereby delaying (and potentially dissipating) any benefits that might have been obtainable by Class Members. And this is particularly important here, because given Defendant's financial condition, if resolution of this case is delayed, it is uncertain whether Plaintiff and the Class would recover anything even if they prevail. *Id.* ¶¶ 2, 6.

Furthermore, there is no clear sailing provision, and the Settlement is not conditioned on the Fee Award. *See Williams v. Reckitt Benckiser LLC*, No. 22-11232, 2023 WL 2906311, at *13 (11th Cir. Apr. 12, 2023). The Fee Award is only paid after final approval, which is the same as all class member payments. Similarly, the only other agreement made in connection with the settlement is a separate settlement with the plaintiff of $5,000 in exchange for his general release.

Finally, the proposed method for distributing claims is straightforward and treats class members fairly and equitably. Each Class Member who timely submits a valid Claim Form by the Claims Deadline shall be entitled to a payment in an amount of $575 per Class Member less each Class Member's share of any Fee Award. Agreement at § 4. Indeed, this amount *exceeds* the amount each Class Member would receive for a single negligent violation of the TCPA. Understanding that these pre-recorded calls were made years ago in many instances, the claim form simply requires individuals to confirm their telephone number, and the administrator will then utilize the calling data to confirm the amount of calls received and issue the reward appropriately.

The Settlement in the present case satisfies each of the factors generally considered by courts in this district on preliminary approval.  Therefore, this Court should – consistent with the Eleventh Circuit's strong judicial policy favoring settlement – preliminarily approve the Settlement Agreement.

### c.   **The Class Should be Certified for Settlement Purposes**

The Supreme Court has made clear that even when the Court determines that a settlement is fair under the strictures of Fed. R. Civ. P. 23(e), it still must consider whether a class can be preliminarily certified under Rules 23(a) and (b). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-21 (1997); *Ortiz v. Fibreboard Corp*., 527 U.S. 815, 858 (1999).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

For settlement purposes, Plaintiff and Class Counsel respectfully request that the Court certify the Class defined in the Agreement. "[T]he 'settlement only' class has become a stock device in modern class action litigation." *In re American Int'l Group, Inc. Secs. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification of the proposed Class will allow notice of the Settlement to issue to inform Class Members of the existence and terms of the Settlement, of their right to object and be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval Hearing. *See Manual for Compl. Litig.*, at §§ 21.632, 21.633 (4th ed. 2004). For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

### i.    Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous the joinder of all members is impracticable." Fed. R. Civ. P. 23(a). The issue is not the numerical size of the class but, as explicitly stated in Rule 23(a)(1), that joinder is impracticable. *Hatisberry v. Lee*, 311 U.S. 32, 41 (1941). The proposed settlement class encompasses more than 2,000 individuals. This number of class members demonstrates that joinder is simply a logistical impossibility.

### ii.    Commonality

Rule 23(a)(2) next requires that there is "a common question of law or fact among the members of the class." As the Supreme Court has explained, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" such that "all their claims can be productively litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). The common questions must generate common "*answers*" that are "apt to drive the resolution of the litigation." *Id*. (citation omitted). Commonality is thus satisfied where the claims of all class members "depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

Under this "relatively light burden," the class action "must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). Accordingly, it is "not just the presence of common questions that matters, but the ability of the class action device to 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 695 (S.D. Fla. 2015).

Here, Plaintiff contends that the common questions are dispositive, apply equally to all class members, and can be resolved using common proof and uniform legal analysis. They include: 1) Whether Defendant made prerecorded calls; 2) Whether Defendant made such calls without prior express written consent; 3) Whether Defendant's conduct violates the TCPA; and 4) Whether

class members are entitled to treble damages based on the willfulness of Defendant's conduct. Plaintiff alleges that these legal and factual questions are shared by all class members.

### iii.    Typicality

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").  Plaintiff is typical of the Settlement Class Members because his claims and the class's claims arise from Defendant's single course of conduct and are based on the same legal theories. Plaintiff has the same TCPA claim as all other Settlement Class Members who were called by Defendant.

### iv.    Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." First, Plaintiff's counsel are experienced class action lawyers whose combined experience in TCPA class actions, and current diligence and commitment to this litigation, will more than adequately protect the interests of the class. *See generally*, Kaufman Decl. Second, there is no conflict or antagonism whatsoever between the Plaintiff and the Settlement Class Members. All share a united interest in ending Defendant's allegedly illegal telemarketing practices, and all seek redress for the harm they suffered because of the practices.

### v.    Common Issues Predominate

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010)

(internal quotation marks omitted). The Settlement Class readily satisfies the Rule 23(b)(3) predominance requirement because the questions common to all Settlement Class Members – including the key issue of whether Defendant had sufficient prior consent to make calls – focus on Defendant's conduct and can be resolved based on common evidence, including Defendant's records and Defendant's employees' testimony. Moreover, TCPA claims, by their nature, involve large numbers of plaintiffs who receive identical telemarketing contacts, a small number of defendants, and a common course of conduct that affected each plaintiff in the same way.

Class members were harmed in the same way, through the receipt of unsolicited, telemarketing calls on their telephone numbers, and their damages are based on the same fixed arithmetic calculation.

### vi.  A Class Action Is the Superior Method Of Adjudicating This Matter

Relatedly, the Class satisfies Rule 23(b)(3)'s superiority requirement because "common issues of law and fact predominate over any individualized issues" and "the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that a class action would be the superior method of adjudicating" Plaintiff's "claims under the TCPA." *See* Kaufman Decl. ¶ 22; *see Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 702 (S.D. Fla. 2018).

### d.  The Court Should Approve the Proposed Notice Plan

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement...." *Manual for Compl. Litig.*, § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314; *Manual for Compl. Litig.*, § 21.312.

The Notice Plan satisfies this standard. It will inform Class Members of the substantive

terms of the Settlement, and their options for remaining part of the Settlement, for objecting to the Settlement or Class Counsel's fee application, for opting-out of the Settlement, for submitting a claim, and for obtaining additional information about the Settlement. Through the provision of (1) the Summary Notice, both directly by mail and email, and (2) the Long-Form Notice, which can be accessed on the Class Settlement Website, the Notice Plan is designed to directly reach a high percentage of Class Members and exceeds the requirements of due process. Kaufman Decl. ¶ 8. Therefore, the Court should approve the Notice Plan and Notices.

## V.      PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court should set a date and time for the Final Approval Hearing, and the other deadlines in the Settlement approval process. Class Counsel propose the following schedule:

| Event | Date |
|---|---|
| Notice Date | 30 days after Preliminary Approval |
| Deadline for filing papers in support of Class Counsel's application for an award of attorneys' fees and expenses | 35 days prior to Opt-Out Deadline |
| Claims Deadline | 60 days after the Notice Date |
| Opt-Out Deadline | 60 days after the Notice Date |
| Deadline for filing Motion for Final Approval | 15 days prior to the Final Approval Hearing |
| Responses to Objections | 7 days prior to the Final Approval Hearing |
| Final Approval Hearing | 90 days after entry of Preliminary Approval |

## VI.      CONCLUSION

Based on the foregoing, Representative Plaintiff and Class Counsel respectfully request that the Court: (1) grant preliminary approval to the Settlement; (2) provisionally grant certification of the Class and appointment of Plaintiff Dumas and Avi R. Kaufman of Kaufman P.A. as Representative Plaintiff and Class Counsel for purposes of the Settlement; (3) approve the Notice Plan and Notices; (4) approve the Claims process; (5) approve the opt-out and objection procedures; and (6) schedule a Final Approval Hearing.

## Certification of Good Faith Conference

Pursuant to Local Rule 7.1(a)(3), I certify that Class Counsel met and conferred with counsel for Defendant, and Defendant agrees to the preliminary approval of the Settlement Agreement while reserving all rights.

Respectfully Submitted,

Dated: September 21, 2023

/s/ Avi Kaufman
Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
*Counsel for Plaintiff and the putative class*

21